MARIA A. CROSS, Plaintiff, *v.* EDWARD F. HOY, as Executor of the Last Will and Testament of Bell K. Wait, Deceased, et al., Defendants.

(Supreme Court, Allegany Equity Term, August, 1917.)

Contracts — to compensate for personal services — consideration — evidence.

Specific performance — contracts — consideration — wills — pleading — evidence — dismissal of complaint.

A contract to compensate another for personal services rendered to the promisor, since deceased, should not only be certain and definite and founded upon an adequate consideration but should be in writing, or if based on oral testimony it should be given or corroborated in all substantial particulars by disinterested witnesses.

By the will of her brother-in-law plaintiff was given a certain sum " for her services as housekeeper for me after the death of my wife, and in addition to what she has and may receive from me during my lifetime "; her daughter was given a certain sum " for assisting her mother about my housekeeping as aforesaid " and the remainder of the estate was given to testator's daughter. In an action to compel the specific performance of an alleged contract on the part of said daughter to make a will in plaintiff's favor, the complaint alleged that plaintiff's brother-in-law, becoming dissatisfied with his will because he had not made adequate provision for plaintiff to compensate her for her services, desired to so change his will that his daughter should have the use of the residuary estate for life with remainder to plaintiff and that testator's daughter in order to induce him to refrain from

Supreme Court, August, 1917. [Vol. 101.

changing his will and in order to induce plaintiff to continue her services to him agreed and promised to hold the residuary estate in trust for plaintiff and would by proper will give, devise and bequeath all of said residuary estate which should be received by her to plaintiff. The only witness as to the consideration for the alleged agreement was the daughter of plaintiff who testified that testator told his daughter that he wanted to change his will so as to give all his property to plaintiff after said daughter was through with it. *Held,* that plaintiff's daughter and her only heir was interested in the enforcement of the alleged contract and that as the consideration therefor was not shown by evidence other than that of said daughter, and her testimony not being corroborated, plaintiff had failed to prove the cause of action and the complaint must be dismissed.

ACTION for specific performance of a contract to make a will in plaintiff's favor.

Walter N. Renwick and Fred A. Robbins, for plaintiff.

Ansley & Ansley, for defendant executor.

J. C. Leggett, for defendants Cass and Rafter.

A. P. Rose, for defendant trustees.

BROWN, J. About November 1, 1901, the plaintiff and her daughter went to live with David Kirkpatrick, the plaintiff's brother-in-law, the plaintiff acting as housekeeper and the daughter assisting. On March 25, 1902, David Kirkpatrick, then in good health, made his last will and testament, bequeathing the plaintiff $1,500, " being for her services as housekeeper for me after the death of my wife, and in addition to what she has and may receive from me during my lifetime." He also gave to the plaintiff's daughter $500 " for assisting her mother about my housekeeping as aforesaid." He gave all the re-

mainder of his property both real and personal to
his daughter, Bell K. Wait. About May 1, 1902, a
bunch appeared on Mr. Kirkpatrick's face which
shortly thereafter was found to be a cancer; its con-
dition rapidly became serious and it was a grave
menace to health and life, resulting in Mr. Kirkpat-
rick's death on April 6, 1903, During his illness the
plaintiff and her daughter continued to reside with
him, taking care of the household and performing
services as nurse in dressing the cancer and looking
after him generally. During the latter part of his
illness a practical nurse was also employed. Upon
his death Bell K. Wait took title to the Kirkpatrick
residence under the provisions of his will, and per-
sonal property of the value of $20,355 was delivered
to her as residuary legatee in said will. Bell K.
Wait died November 4, 1915, leaving a last will and
testament, executed in July, 1911, which was ad-
mitted to probate March 16, 1916, in and by which
will she bequeathed to the plaintiff a mink cape, all
her white china, eight cut glass finger bowls and
$2,000, and to the plaintiff's daughter the sum of
$1,000. The Kirkpatrick residence she devised to the
defendant trustees in trust to make use of as a home
for childless women; one-fourth of the remainder of
her estate she gave to the defendant Cass, one-fourth
thereof to the defendant Rafter, and one-half thereof
to the defendant trustees for the benefit of the home
for childless women.

On July 19, 1916, the plaintiff brought this action,
alleging that on about October, 1902, the decedent,
David Kirkpatrick, was dissatisfied with the terms of
the will that he had executed in March, 1902, for the
reason that he had not made adequate provision for
the plaintiff to compensate her for her services, and
desired to change the provisions thereof so that his

daughter, Bell K. Wait, should have the use of the residuary estate for life, with remainder to the plaintiff; that Bell K. Wait, in order to induce David Kirkpatrick to refrain from changing his will and in order to induce the plaintiff to continue her services, agreed and promised to and with said Kirkpatrick and the plaintiff that if the said Kirkpatrick would not change his will and if plaintiff would continue her services to him, she, Bell K. Wait, would hold said residuary estate, to be received from David Kirkpatrick, in trust for the plaintiff and that she, Bell K. Wait, would by proper will give, devise and bequeath all of said residuary estate which should be received by her in the will of said Kirkpatrick to the plaintiff. Plaintiff demands judgment that she be decreed the owner of such real estate and that she recover from defendant executor the sum of $20,355, the amount in his hands received by his testatrix, Bell K. Wait, from the estate of David Kirkpatrick.

In proof of the plaintiff's claims, the plaintiff's daughter testified that about the last of October, 1902, she was present at the Kirkpatrick residence in Cuba, N. Y., and heard a conversation between David Kirkpatrick, Bell K. Wait and the plaintiff wherein David Kirkpatrick said to Bell K. Wait, " Well, Bell, I have sent for you, because I don't feel I have given Tute [plaintiff] enough in my will; I didn't realize what I was getting her into last November when I asked her to come and keep house for me; I don't want a stranger to come into the home, and she has been so good to me, I want her to see me through; I want to change it so that what is mine will go to her when you are through with it." To which Bell K. Wait replied, " Father, you are sick and I wouldn't bother getting a lawyer here to change things; if Tute [plaintiff] will stay I will go home and make a will leaving all that

comes to me from you to her, and things will be just as you want them to be." David Kirkpatrick said: "All right, if you will do that. I don't want my money to go up in the Wait Settlement, Henry [Bell K. Wait's husband] has enough to leave to his own people, and I want Tute [plaintiff] to have this property when you are through with it so it will remain in the family." Bell K. Wait replied: " I will go right home now and fix everything up just the way you want it." David Kirkpatrick turned to the plaintiff and said: "Are you satisfied with it? " to which plaintiff said she was with that arrangement. On the way to the railroad station Bell K. Wait said to plaintiff's daughter: " Father need never worry, his money will never go up in Wait's Settlement. I will go home and fix things as he wants them, and I will let you know in a day or two when I get it all fixed."

November 4, 1902, Bell K. Wait wrote a letter to plaintiff's daughter saying, among other things, " Tell my dear father to keep up courage  *  *  *. Tell him and be sure, I have attended to that business he suggested so he need have no further fear how things will go when we are all dead. Everything will be arranged to his entire satisfaction  *  *  *. I don't see why I should try to prolong my useless existence, I can't go till my time comes and that is sure, neither can I stay or defend myself from death when it comes if I would. I have arranged all my little matters and now ' let her go.' Good bye my best love to daddy & lots for yourself and mother, believe me as ever thine Bell. Burn this sure."

Plaintiff's daughter also testifies that about ten days after the foregoing letter was received Bell K. Wait came to Cuba and in the presence of the witness told her father, David Kirkpatrick, that she had made her will. David Kirkpatrick seemed pleased about it

and said: " Bell does just as I want her to; she is a good girl. God bless her."

" Q. At any time in this conversation, in either of these conversations, was anything said by anybody on the subject of having this agreement put in writing? A. When my uncle told it to my mother, when Bell had done this — [Objection.] Q. Well, during Mrs. Wait's presence? A. After Mrs. Wait had made her will, he asked mother right before me, ' Does that satisfy you? ' Mother said it better be in black and white, but he said, ' She will do just as I want her to.' "

Margaret Way testified that on one occasion at the Kirkpatrick residence after the death of David Kirkpatrick a Mrs. Bartholomew in the presence of the witness said to Bell K. Wait, " How nice it is that your father gave this to Mrs. Cross after you are through," and that Mrs. Wait replied, " I'm living yet."

George H. Swift testified that on one occasion when Bell K. Wait was talking with him about selling the Kirkpatrick residence the witness said: " I thought that went to Mrs. Cross when you are through with it." Mrs. Wait replied, " Who told you so? " The witness said, " Your father," and she said, " Well, she will have to wait a good while until she gets it because I'm going to live until I'm eighty-five."

Dallas B. Whipple testified that in 1905 he met Bell K. Wait on the street and said to her, " Your father told me that Mrs. Cross and Cornelia (the plaintiff's daughter) were taken care of and Mrs. Cross would be well paid for what she had done for him. Your father told me that you had made a will giving the home and his property, the balance of his property, to Mrs. Cross; and he said, ' I asked if she would be willing to do that and she said she would, and she went home and in two or three days wrote a letter

saying she had done it.' '' The witness Whipple testified that Bell K. Wait " said she wrote a letter saying she had done it, made the will, and it would go just exactly as he wanted it should go;" and he further testified that he said to Bell K. Wait, " Your father told me you wrote a letter that you made a will and everything would go just as he wanted it," and that she replied, " That letter was burned long ago;" and according to the witness " She spoke up with some force as if she didn't like our conversation."

Does such testimony establish in a clear and convincing manner that in consideration of David Kirkpatrick's refraining from changing his will Bell K. Wat agreed that on her death she would give to plaintiff all the property that she should receive under the unchanged will of David Kirkpatrick?

The Court of Appeals has said that such contract should be in writing and that the writing should be produced, or, if ever based upon parol evidence, it should be given or corroborated in all substantial particulars by disinterested witnesses. *Hamlin* v. *Stevens,* 177 N. Y. 39. " We have repeatedly held that such a contract must not only be certain and definite and founded upon an adequate consideration, but also that it must be established by the clearest and most convincing evidence." *Rosseau* v. *Rouss,* 180 N. Y. 116.

This is an action to enforce a contract. The consideration for the alleged agreement of Bell K. Wait to will all property she received from her father to the plaintiff was the withholding of the intention of David Kirkpatrick to change his will. While it is true that the letter above set forth speaks of Bell K. Wait having made her will as suggested by her father, and the witnesses relate conversations with her upon the subject of her having made a will leaving all the prop-

erty she received from her father to the plaintiff, and while it is true that the letter and the witnesses corroborate about all the items of the alleged agreement except the essential consideration, yet only one witness pretends to provide the necessary consideration for such alleged agreement. The daughter of the plaintiff, Cornelia Cross, testifies that David Kirkpatrick told his daughter, Mrs. Wait, that he wanted to change his will so as to give all his property to the plaintiff after Mrs. Wait was through with it. This daughter must be held to be interested in the enforcement of this alleged contract; she is the only heir at law of her mother; her mother is now upwards of seventy-one years of age. Corroboration of the evidence as to the consideration for the contract is quite as important as corroboration of the evidence as to any other part of the contract. The promise by Bell K. Wait to will to plaintiff what property she would receive from her father would not be enforcible unless it was founded upon some consideration. The plaintiff alleges that the consideration for such promise was the refraining by David Kirkpatrick from changing his will; that Bell K. Wait induced her father not to change his will; that Bell K. Wait prevented David Kirkpatrick from giving a larger legacy to the plaintiff than the legacy of $1,500 in the will of March, 1902, by making the promise or agreement. When the Court of Appeals has said that the contract must be founded on an adequate consideration (*Rosseau* v. *Rouss, supra*) and, if based on parol evidence, corroborated in all substantial particulars (*Hamlin* v. *Stevens, supra*), there is no escape from the conclusion that a vital part of this alleged contract, the consideration, must be proved by evidence other than that given by Cornelia Cross, or that her testimony must be corroborated. There is not a suggestion in the letter of

Bell K. Wait, or in the testimony of the witnesses Swift, Way or Whipple that David Kirkpatrick ever thought of changing his will of March, 1902, or in any way made the legacy and devise to his daughter, Bell K. Wait, conditional upon her leaving the same to the plaintiff upon her death. In the will made March, 1902, David Kirkpatrick devised and bequeathed all his property to his daughter, Mrs. Wait, absolutely, excepting legacies to plaintiff and others. Any promise made by the daughter in October, 1902, to use, enjoy, devise or bequeath this property in any particular manner, even made to David Kirkpatrick, would create no legal obligation upon her unless founded upon some consideration. The consideration here alleged and sought to be proved is the withholding of the intention to change the will, because of the promise. The failure to prove the consideration of the alleged contract in the manner specified by the Court of Appeals forces the conclusion that the plaintiff has not proved her cause of action, and her complaint must be dismissed, with costs to all parties payable out of the estate.

Ordered accordingly.